## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CHAMBERS OF
JOHN MICHAEL VAZQUEZ
UNITED STATES DISTRICT
JUDGE

FRANK R. LAUTENBERG
POST OFFICE AND
COURTHOUSE
2 FEDERAL SQUARE, ROOM
417
NEWARK, NJ 07102
973-297-4851

August 18, 2016

VIA ECF

Re:    **R.K. and D.K. o/b/o R.K. v. Ridgewood Village Board of Education**
       **Civil Action No. 16-5019**

Dear Litigants:

**THIS MATTER** comes before the Court by way of Plaintiffs' Verified Complaint and Application for an Order to Show Cause seeking a preliminary injunction requiring that Defendant Ridgewood Village Board of Education ("Ridgewood") provide services pursuant to the "stay put" provision of the Individual with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(j) during the pendency of due process proceedings presently before the New Jersey Office of Administrative Law. Plaintiffs filed a brief in support of their application (D.E. 1-1) and Defendant filed a brief in opposition (D.E. 3). The Court considered the submissions in support and in opposition to Plaintiffs' application and heard oral argument on the matter on August 17, 2016. The issue in this case concerns whether R.K. is entitled to Home Program services from August 4, 2016 through September 7, 2016 – the period during which R.K.'s school was not in session. To decide this issue, the Court must determine the "then-current educational placement" of R.K. when the stay put provision became effective. For the reasons stated on the record and as explained below, the Court affirms the ALJ's determination that Plaintiffs' are not entitled to the requested services pursuant to the stay put rule and Plaintiffs' application is **DENIED**.

## I.    Background

The facts are well known to the parties and are described in detail in their papers. Therefore, the Court will only discuss the facts that are relevant to this appeal.

R.K. is the eleven-year-old son of R.K. and D.K., is enrolled in the Ridgewood Village Public School District and attends the Children's Institute ("TCI"), a private school in Verona, New Jersey. Verified Complaint ("Compl.") ¶¶ 4-5, 8. R.K. is autistic and "has substantial delays in all developmental domains and has a history of significant challenges in learning language and communication skills." *Id.* ¶¶ 4, 6. R.K.'s parents allege that he requires

1

"continuous, year-round school and home programming" and that "breaks of more than two weeks in the summer will cause him to regress and should be avoided." *Id.* ¶ 11. R.K. is eligible for special education and related services as a "child with a disability" under the IDEA. As such, his educational needs are provided pursuant to an Individualized Education Plan ("IEP"). *Id.* ¶ 4, 7.

Two of R.K.'s IEPs are relevant to this matter. The first is the December 9, 2013 IEP, which was modified through a mediation agreement from May 6, 2015 (hereinafter the "May 2015 IEP"). *Id.* ¶ 16. The May 2015 IEP maintained R.K.'s educational program but reduced the number of hours that R.K. received Home Program services. The Home Program services provided additional instruction to R.K. and parental training outside of customary school hours. *Id.* ¶¶ 9-10, 16. The Home Program consisted of a total of eleven hours per week of instruction, training, and coordination, as well as one hour per month of clinic. *Id.* ¶¶ 12, 16. After the May 2015 IEP was agreed upon, an issue arose as to whether the Home Program would run for the entire summer or if it coincided with TCI's extended school year ("ESY"), which did not occur during the month of August. *Id.* ¶¶ 18-21. Ridgewood agreed to provide the Home Program to R.K. in August 2015, although the parties disagree as to whether this was actually required by the IEP or was voluntarily agreed to by Ridgewood. *Id.* ¶ 22. For purposes of the present motion, Ridgewood appears to concede that the May 2015 IEP indicated that R.K. would receive Home Program services in August while school is not in session.

The second relevant IEP was hand-delivered to Plaintiffs' home on December 23, 2015, after the parties attended an annual IEP review meeting on December 15, 2015 (hereinafter the "December 2015 IEP"). *Id.* ¶ 35. Plaintiffs believed that the December 2015 IEP "had a number of errors," including the fact that the Home Program schedule coincided with TCI's ESY, instead of taking place for the entire calendar year. *Id.* ¶ 36. After receiving the December 2015 IEP, D.K. sent an email to R.K.'s case manager, Gila Elbaum, on January 7, 2016 to inquire about the Home Program error, among other issues. *Id.* ¶¶ 37-38. Elbaum replied to D.K.'s email on January 12, 2016. In regards to D.K.'s question about the Home Program schedule, Elbaum replied that "the home program runs concurrent with the school program and school calendar."[1] *Id.* ¶¶ 41, 46; D.K. Certification Ex. F. On January 16, 2016, D.K. sent a follow-up email to Elbaum stating that R.K. "needs a year-round home program without extended breaks" and that the proposal to limit the home program schedule to the ESY schedule is inappropriate." Compl. ¶¶ 47-49; D.K. Certification Ex. F. Elbaum replied through another email on January 22, 2016, stating that "this is not a change to what is being done in the home program" but that "the extended school year home program will run in concert with the dates of the TCI extended school year." Compl. ¶¶ 50-51, D.K. Certification Ex. G.

On January 22, 2016, Plaintiffs' attorney reached out to Ridgewood's attorney, David Rubin, "to see if the parties could resolve the remaining issue regarding the Home Program schedule." Compl. ¶ 54. Rubin responded on February 23, 2016, "at which time he affirmed the position taken by Elbaum," namely that the Home Program dates would correspond with the

---

[1] There is a factual dispute as to whether the Home Program was discussed at the December 15 IEP meeting. *See* Compl. ¶ 28. The Court, however, does not need to resolve this dispute for purposes of this appeal.

ESY dates. *Id.* ¶ 55. During oral argument, Plaintiffs' counsel conceded that this was the last possible date to which the pertinent regulation, discussed further below, applied. On March 4, 2016, the ESY program dates were confirmed and Plaintiffs learned that TCI's ESY would run from July 5 to August 3, 2016. *Id.* ¶¶ 56-57. As a result, Plaintiffs learned that R.K. would not receive Home Program services from August 4, 2016 and September 7, 2016. *Id.* ¶ 58. Plaintiffs had already learned in December 2015 that Ridgewood would only provide the Home Program through the ESY; the precise dates of the ESY were not determined until March 2016.

After learning the exact ESY dates, on March 28, 2016, Plaintiffs filed a request for a due process challenge "because it is not appropriate for R.K. to be entirely without ABA-based services for five weeks." *Id.* ¶ 59. Mediation was initially scheduled for April 27, 2016, and due to a dispute between Ridgewood and the Home Program provider regarding responsibility for the cost of services, it ultimately occurred on May 26, 2016. *Id.* ¶¶ 60-63. The mediation was unsuccessful. *Id.* ¶ 64. The parties also attended a settlement conference on June 16, 2016, which was also unsuccessful. *Id.* ¶ 65. As a result, the matter was referred to Administrative Law Judge Joan Bedrin Murray (the "ALJ"). *Id.* ¶ 66. At a scheduling conference with the ALJ on June 20, 2016, Plaintiffs first discussed their intent to file a motion for summary decision and stay put "to enforce R.K.'s IDEA-guaranteed right to have his Home Program maintained without change during the pendency of the due process proceedings." *Id.* ¶ 67. Plaintiffs filed their motion on June 25, 2016, and after the motion was fully briefed, the ALJ held a conference call regarding the motion on July 27, 2015. *Id.* ¶¶ 69-71. On August 15, 2016, the ALJ entered an Order denying Plaintiffs' request for summary decision because there were material facts in dispute and Plaintiffs' motion to enforce stay-put." *Id.* ¶¶ 73-74. The matter is currently scheduled for a plenary hearing on September 23, 2016. While Plaintiffs pursued their administrative appeal, TCI's ESY program ended on August 3, 2016 as scheduled, and R.K. has not received Home Program services since that date. *Id.* ¶ 72.

In the August 15 Order, the ALJ recognized that pursuant to N.J.A.C. 6A:14-2.7(u), New Jersey's "stay put" rule, "a child's placement pending plenary hearing should remain unchanged." ALJ Op. at 8. The ALJ determined that to adhere with the stay put rule, she must reference other procedural requirements to determine which IEP "is the one that must remain in effect pending resolution of a due process petition." *Id.* The ALJ determined that the December 2015 IEP "is the 'stay put' IEP" due to N.J.A.C. 6A:14-2.3(h)(3)(ii). *Id.* Pursuant to 6A:14-2.3(h)(3)(ii), a district "shall" implement an IEP after fifteen days' notice. The ALJ concluded that because Plaintiffs filed their due process petition in March, more than three months after they received the December 2015 IEP, Ridgewood had already implemented the December 2015 IEP. Because the December 2015 IEP did not provide Home Program services during the month of August, R.K. was not entitled to these services pursuant to the stay put provision. *Id.* at 8-9.

Plaintiffs appealed the ALJ's determination regarding the stay put rule through this application for an order to show cause on August 17, 2016. Plaintiffs argue that the stay put provision acts to maintain the "status quo." Plaintiffs further claim that because R.K.'s Home Program was not scheduled to change until August 2016, the "status quo" when they filed their request for a due process hearing in March 2016 provided for home services after the ESY ended. As a result, Plaintiffs argue this is the status quo that should be maintained under the

3

stay put provision. Plfs. Br. at 15-16. Plaintiffs argue that the ALJ improperly relied on N.J.A.C. 6A:14-2.3(h)(3), which only serves to ensure that parents receive timely notice of proposed changes and that a school properly implements any changes, and should not affect the stay put rule. Specifically, Plaintiffs argue that the ALJ should not have focused on which IEP was in effect, and instead should have looked at what services R.K. was receiving as of March 2016. Plfs' Br. at 16-17. Defendant acknowledges that the stay put rule acts as an automatic statutory injunction against attempts to change a student's program but argues that the ALJ correctly determined that the December 2015 IEP was the operative stay put IEP. Because the December 2015 IEP did not provide for Home Program services for the month of August, R.K. is not entitled to the services during the pendency of the due process hearing, according to Defendant. Def's Br. at 13.

## II.   Legal Framework

This Court has federal subject matter jurisdiction over the matter pursuant to 28 U.S.C. § 1331. "Although the stay-put provision has no express language concerning appeal to a district court from an ALJ determination, our courts accept jurisdiction of stay put disputes." *Cinnaminson Twn. Bd. of Educ. v. K.L.*, No. 16-3586, 2016 WL 4212121, at *3 (D.N.J. Aug. 9, 2016) (quoting *R.S. v. Somerville Bd. of Educ.*, 2011 WL 32521, at *8 (D.N.J. Jan. 5, 2011)). Moreover, district courts can address interlocutory appeals of stay put decisions that involve legal disputes. *Id.* at *4. Courts apply a modified *de novo* standard of review to appeals of ALJ findings. *Id.* at *3. As such, the Court provides "due weight to factual findings by the ALJ, but allows for *de novo* review of issues of law." *Id.* "The question of what constitutes a student's 'current educational placement' under IDEA's stay put provision is one of law." *R.S.*, 2011 WL 32521, at *6. As a result, our review of the ALJ stay put decision is *de novo*.

## III.   Discussion

The IDEA provides numerous procedural safeguards to protect the interests of special needs children. At issue here is the "stay put" provision, 20 U.S.C. § 1415(j). *Cinnaminson Twn. Bd. of Educ.*, 2016 WL 4212121, at *4. The stay put provision provides that during the pendency of IDEA proceedings, "the child shall remain in the then-current educational placement." *D.M. v. N.J. Dep't of Educ.*, 801 F.3d 205, 211 (3d Cir. 2015) (quoting 20 U.S.C. § 1415(j)). The stay put rule "functions, in essence, as an automatic preliminary injunction" and "the usual prerequisites to injunctive relief are not required." *Id.* (quoting *Drinker ex rel Drinker v. Colonial Sch. Dist.*, 78 F. 3d 859, 864 (3d Cir. 1996)). If the stay put rule applies, "children are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved regardless of whether their case is meritorious or not." *Id.*

At issue in this appeal is what was the "then-current educational placement" of R.K. when Plaintiffs requested the due process hearing on March 28, 2016? To answer this question, the ALJ correctly looked to N.J.A.C. 6A:14-2.3(h), which requires a district to implement an IEP after certain circumstances, which largely address notice to parents, are satisfied. Specifically, N.J.A.C. 6A:14-2.3(h)(3) provides that "the district board of education shall implement" an IEP after providing timely notice to a parent, and providing the parents 15 days to respond, unless:

(i) The parent disagrees with the proposed action and the district takes action in an attempt to resolve the disagreement; or

(ii) The parent requests mediation or a due process hearing according to N.J.A.C. 6A:14–2.6 or 2.7.

N.J.A.C. 6A:14-2.3(h)(3).  The ALJ focused solely on subsection (ii) of N.J.A.C. 6A:14-2.3(h)(3).  ALJ Opinion at 8-9.  Although the facts demonstrate that subsection (i) could also be at issue, the parties agreed at oral argument that neither subsection is at issue here.  Plaintiffs' counsel acknowledged that the last possible date that could apply to subsection (i) was February 23, 2016, when Ridgewood's counsel indicated that the District was following the proposed timeframe, i.e. proving services concurrently with the ESY and not throughout the entire summer.[2]  As a result, N.J.A.C. 6A:14-2.3(h)(3) mandated Ridgewood to implement the December 2015 IEP unless Plaintiffs requested mediation or a due process hearing within the given 15 days.  Plaintiffs did not do so, as they acknowledge.  Consequently, when Plaintiffs ultimately requested a due process hearing on March 28, 2016, the December 2015 IEP was clearly in effect.  Therefore, this IEP, which does not provide for Home Program services outside TCI's ESY dates, is the relevant IEP for any stay put inquiry.

Plaintiffs argue that the ALJ erred because she incorrectly focused on which IEP was in effect when the due process hearing was requested in March 2016.  Plfs. Br. at 15-18.  Plaintiffs argue that the stay put rule does not contemplate whether a specific IEP is in effect because it only mentions the "then current educational placement."  20 U.S.C. § 1415(j).  As a result, Plaintiffs argue that the ALJ improperly focused on the December 2015 IEP requirements, when she should have more globally considered R.K.'s "educational status quo" as of March 2016.  *Id.*  Plaintiffs argue that because the gap in Home Program services was more than three months away and had not yet gone into effect, the "status quo" in March was that R.K. received year-round Home Program services.  *Id.*  As a result, until the due process proceedings are resolved, R.K. is entitled to Home Program services.  The Court disagrees.  The Third Circuit makes clear that the "educational placement" contemplated in the stay put provision is the operative IEP at the time.  *Drinker*, 78 F.3d at 867 (considering "the IEP *actually functioning* when the stay put provision of the IDEA was invoked" (emphasis added); *see also M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 118 (3d Cir. 2014) ("To determine [the then-current educational] placement, this court has looked to the IEP 'actually functioning when the 'stay put' is invoked.") (quoting *Drinker*, 78 F.3d at 867.); *S.K. ex rel N.K. v. Parsippany-Troy Hills Bd. of Educ.*, No. 07-4631, 2008 WL 4561512, at *3 (D.N.J. Oct. 9, 2008) ("Our jurisprudence defines the 'then-current educational placement' as the IEP actually functioning when the stay-put is invoked.  In other words, it is generally the placement associated with the child's most recent IEP.").  Here, the IEP that was actually functioning at the time Plaintiffs requested a due process hearing was the December 2015 IEP.  Moreover, adopting Plaintiffs' interpretation of the stay-up rule would create an untenable result.  Doing so would break student's IEPs into small, discrete pieces with varying

---

[2] The Court is not making a factual determination as to when the December 2015 IEP was implemented because the actual date of implementation does not matter for the purposes of this appeal.

deadlines applying to a single IEP, depending upon when specific aspects of the IEP were to be implemented during a given school or calendar year. Such an approach would encourage piece-meal litigation and the implementation of N.J.A.C. 6A:14-2.3(h)(3) would become unduly onerous if not unworkable.

Plaintiffs argue that *B.A.W. v. East Orange Bd. of Educ.*, demonstrates that the ALJ incorrectly focused on which IEP was in effect when the due process hearing was requested. No. 10-4039, 2010 WL 3522096, at *5 (D.N.J. Aug. 31, 2010). Plfs' Br. at 15.16. This case, however, is distinguishable. In *B.A.W.*, the court observed that as to the fifteen-day rule, "it is entirely unclear from the record when B.A.W. (and/or his mother) first received a copy of the January 2010 IEP, and [] in any event Defendant cites to no specific rule, section of the administrative code or other legal authority in support of his position." *Id.* at *4 n.8. In this instance, there is no dispute that a copy of the IEP was hand-delivered to Plaintiffs on December 23, 2015 (Compl. ¶ 35), and Defendant specifically cites to N.J.A.C. 6A:14-2.3(h)(3), which the Court finds applicable. It does not appear that the defendant in *B.A.W.* directed the court to this provision. As discussed, because N.J.A.C. 6A:14-2.3(h)(3) *required* Ridgewood to adopt the December 2015 IEP, this document must be used determine the "educational status quo." *Drinker*, 78 F.3d at 867.

Relying upon N.J.A.C. 6A:14-2.7(u) , Plaintiffs also argue that New Jersey's stay put provision does not specifically contemplate which IEP is at issue and that pursuant to the New Jersey rule, the Court should look at the status quo without considering the operative IEP. N.J.A.C. 6A:14-2.7(u) provides in relevant part that "[p]ending the outcome of a due process hearing, including an expedited due process hearing, or any administrative or judicial proceeding, no change shall be made to the student's classification, program or placement unless both parties agree[.]" However, "[t]he provisions of N.J.A.C. 6A:14-2.7(u) . . . ha[ve] the same meaning as the language of 20 U.S.C.A. § 1415(j)." *J.H. & T.H. ex rel J.H. v. Cent. Reg'l Bd. of Educ.*, OAL Dkt. No. EDS 11713-12, 2012 WL 3879378, at *3 (Sept. 4, 2012).[3] In essence, the New Jersey regulatory provision cited by Plaintiffs requires the same stay put requirement as the IDEA. This provision, however, does not answer the central question, *i.e.* which IEP was in effect when the stay put provision applied? Consequently, Plaintiffs' argument that the New Jersey stay put rule requires that R.K. continue to receive Home Program services is unavailing.

---

[3] Although not raised by the parties, the Court notes that *J.H.* does discuss Administrative Law decisions that did not require strict adherence with N.J.A.C. 6A:14-2.3(h)(3), such that the stay put rule applied to a prior IEP. 2012 WL 3879378, at *3-4. In those cases, the ALJ looked at the totality of the circumstances and in essence, equitably tolled the fifteen-day requirement set forth in N.J.A.C. 6A:14-2.3(h)(3). Those cases, however, appeared to involve uncounseled parents who nevertheless notified the relevant school board of their disagreements with the proposed IEPs. The Court does not see any basis to loosen the requirements of N.J.A.C. 6A:14-2.3(h)(3) here, where Plaintiffs have been represented by an attorney, were aware of Ridgewood's position regarding dates that Home Program services would be provided since December 2015 and knew that Ridgewood would not consider changing its position by, at the latest, February 2016.

## IV.   Conclusion

For the reasons stated above, the Court affirms the ALJ's decision that the relevant stay put provisions, 20 U.S.C.A. § 1415(j) and N.J.A.C. 6A:14-2.7(u), do not require Ridgewood Village Board of Education to provide Home Program services for R.K. outside of the extended school year program dates.  Plaintiffs' Application for an Order to Show Cause seeking a preliminary injunction requiring Ridgewood to provide these services is **DENIED**.

John Michael Vazquez, U.S.D.J.